**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WIRELESS DISCOVERY LLC, | |
| Plaintiff, | |
| v. | C.A. No. 22-480-GBW |
| EHARMONY, INC., | |
| Defendant. | |
| WIRELESS DISCOVERY LLC, | |
| Plaintiff, | |
| v. | C.A. No. 22-484-GBW |
| THE MEET GROUP, INC., | |
| Defendant. | |

**MEMORANDUM ORDER**

Presently before this Court is Defendant eHarmony, Inc.'s ("eHarmony") and Defendant The Meet Group, Inc.'s ("The Meet Group") Motions to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). C.A. No. 22-480, D.I. 30; C.A. No. 22-484, D.I. 12. The Court has reviewed the parties' briefing, No. 22-480, D.I. 31, D.I. 39, D.I. 40; No. 22-484,

D.I. 13, D.I. 20, D.I. 23,[1] and heard oral argument on December 14, 2022.[2] ("Tr. __"). For the reasons below, the Court GRANTS-IN-PART and DENIES-IN-PART eHarmony's Motion to Dismiss, No. 22-480, D.I. 30, and GRANTS The Meet Group's Motion to Dismiss, No. 22-484, D.I. 12.

## I.    BACKGROUND

On April 13, 2022, Plaintiff Wireless Discovery LLC ("Wireless Discovery") sued eHarmony and The Meet Group in separate patent infringement cases asserting infringement of U.S. Patent No. 9,264,875 ("the '875 patent"). No. 22-480, D.I. 1; No. 22-484, D.I. 1. Wireless Discovery amended its complaint in the eHarmony case on July 18, 2022, asserting three additional patents: U.S. Patent Nos. 9,357,352 (the "'352 patent"), 10,321,267 (the "'267 patent"), and 10,334,397 (the "'397 patent"). No. 22-480, D.I. 21.

The asserted patents are all from the same patent family and are continuations-in-part of U.S. Patent No. 8,914,024, which is not asserted in either case. The asserted patents all relate generally to the idea of social networking, i.e., discovering members of the same social network

---

[1] The parties also filed letter briefs identifying which U.S. Supreme Court or Federal Circuit case(s) they contend is most similar to the patent(s)-at issue. No. 22-480, D.I. 48, D.I 49; No. 22-484, D.I. 38, D.I. 39.

[2] The Court also heard oral argument on Defendant Coffee Meets Bagel, Inc.'s, Defendant Down App, Inc.'s, Defendant Grinder, Inc.'s, and Defendant Hily Corp.'s Motion to Dismiss in *Wireless Discovery LLC v. Coffee Meets Bagel, Inc.*, No. 22-478, *Wireless Discovery LLC v. Down App, Inc.*, No. 22-479, *Wireless Discovery LLC v. Grindr, Inc.*, No. 22-481, and *Wireless Discovery LLC v. Hily Corp.*, No. 22-482. C.A. No. 22-478, D.I. 24; C.A. No. 22-479, D.I. 25; C.A. No. 22-481, D.I. 27; C.A. No. 22-482, D.I. 25. The Court issued a similar but separate opinion in those cases. The Court similarly finds in those cases that the asserted patents are not patent eligible under 35 U.S.C. § 101.

in the same vicinity and exchanging member's personal information. *See* No. 22-480, D.I. 21-5 at 1:16-22 ("The invention relates to discovering members of a social network by associating their personal attributes to the mobile device for the purpose of exchanging information using mobile communication devices and, in particular, exchanging personal information between one or more mobile communication devices."); No. 22-484, D.I. 1-3 at 1:16-22 (same).

Individuals can "use their mobile phones to discover others by personal attributes, such as by photos and names, after which, the two parties can exchange information over the internet." No. 22-480, D.I. 21-5 at 2:4-7; No. 22-484, D.I. 1-3 at 2:4-7. These individuals can discover other members who are located "within a vicinity." No. 22-480, D.I. 21-5 at 4:4-6; No. 22-484, D.I. 1-3 at 4:4-6. The "vicinity" is determined by a location that was reported to the server, in the geographic area specified by a user's "search criteria," or by a location recorded in a database. No. 22-480, D.I. 21-5 at 5:4-15; No. 22-484, D.I. 1-3 at 5:4-15.

Individuals can send "invitations" to other members in the vicinity. No. 22-480, D.I. 21-5 at 5:14-22; No. 22-484, D.I. 1-3 at 5:14-22. "The invitation may take the form of a social card, VCard, or other manner of engaging another person in a social atmosphere, or even a business setting such as a meeting, trade show, conference, etc." No. 22-480, D.I. 21-5 at 5:18-22; No. 22-484, D.I. 1-3 at 5:18-22. If a user accepts the "invitation," "members can elect to exchange or send personalized, intimate contact information over the internet after the users have discovered each other." No. 22-480, D.I. 21-5 at 4:10-12; No. 22-484, D.I. 1-3 at 4:10-12. The invention "provides a system and method that enables free discovery of others who also desire social interaction, but without being constrained by hardware compatibility issues inherent in mobile devices by different manufacturers." No. 22-480, D.I. 21-5 at 2:20-24; No. 22-484, D.I. 1-3 at 2:20-24.

## II.   LEGAL STANDARD

### a.  Motion to Dismiss Under Rule 12(b)(6)

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

### b.  Collateral Estoppel

Collateral estoppel (i.e., issue preclusion) precludes parties from relitigating an issue that they previously had a full and fair opportunity to litigate. *See Montana v. United States*, 440 U.S. 147, 153 (1979). Regional circuit law governs the general procedural question of whether collateral estoppel applies. *See ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir. 2018). "However, for any aspects that may have special or unique

4

application to patent cases, Federal Circuit precedent is applicable." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (citation omitted).

Under Third Circuit law, collateral estoppel applies when "(1) the identical issue [was] previously adjudicated; (2) the issue [was] actually litigated; (3) the previous determination of the issue [was] necessary to the decision; and (4) the party being precluded from relitigating the issue [was] fully represented in the prior action." *Stone v. Johnson*, 608 F. App'x 126, 127 (3d Cir. 2015); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006). "The party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).

### c.  Attorney Fees

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." An "exceptional" case under § 285 is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "The party seeking fees must prove that the case is exceptional by a preponderance of the evidence, and the district court makes the exceptional-case determination on a case-by-case basis considering the totality of the circumstances." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1382 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1367 (2022) (citation omitted). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 572 U.S. at 555.

### d. Patent Eligible Subject Matter

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016))); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility). This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted). "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into

something more[] thereby 'transforming' them into a patent-eligible invention. The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 217 (cleaned up).

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Id.* In other words, are the claims directed to a law of nature, natural phenomenon, or abstract idea? *Id.* If the answer to the question is "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If the answer to the question is "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610–11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies the second step of *Alice*, "is a question of fact. Any fact, such as

7

this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## III.   DISCUSSION

### a.   Collateral Estoppel

Defendants eHarmony and The Meet Group argue claims 1 through 9 of the '875 patent should be dismissed based on collateral estoppel. No. 22-480, D.I. 31 at 2, 5; No. 22-484, D.I. 13 at 2, 5. On November 18, 2021, during a *Markman* hearing in a different case involving Wireless Discovery, Judge Albright held claim 1 of the '875 patent indefinite and, therefore, invalid. *Wireless Discovery LLC v. Bumble Trading Inc.*, No. 6:20-cv-00762, D.I. 43 at 5 (W.D. Tex. Nov. 18, 2021). With respect to claim 1 of the '875 patent, the Court finds Wireless Discovery is collaterally estopped from asserting that claim. A court may consider the preclusive effect of another federal district court judgment on a motion to dismiss under Rule 12(b)(6). *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010). When deciding a Rule 12(b)(6) motion, a court should consider "documents that are attached to or submitted with the complaint, [] and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). "[A] prior judicial opinion constitutes a public record of which a court may take judicial notice." *M & M Stone*, 338 F. App'x at 162.

The Federal Circuit has held that "once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under the principles of collateral estoppel." *See*

8

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999) (quoting *Mendenhall v. Barber–Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994)). Defendants eHarmony and The Meet Group "may reap the benefit of [Judge Albright's] invalidity decision under the principles of collateral estoppel." *See Pharmacia*, 170 F.3d at 1379 (quotation omitted). Wireless Discovery provides no substantive arguments why independent claim 1 of the '875 patent should not be dismissed because of collateral estoppel. *See generally* No. 22-480, D.I. 39; No. 22-484, D.I. 23.

The Court will not decide on the merits whether claims 2 through 9 of the '875 patent are collaterally estopped. During the *Markman* hearing, Judge Albright did not determine whether claims 2 through 9 of the '875 patent were indefinite. However, Wireless Discovery stated during oral argument and in its briefing that it no longer asserts claims 1 through 9 of the '875 patent. *See* No. 22-480, D.I. 39 at 3; Tr. 23:22:25. Thus, the Court finds Defendants eHarmony's and The Meet Group's collateral estoppel arguments regarding claims 2 through 9 of the '875 patent unopposed.

For the reasons discussed above, Wireless Discovery is collaterally estopped from asserting claims 1 through 9 of the '875 patent.

### b. Attorney Fees Under § 285

In its reply brief, eHarmony also requests the Court to find this case "exceptional" under 35 U.S.C. § 285 and award eHarmony attorney fees. No. 22-480, D.I. 40 at 9-10. The Court finds that eHarmony's request is waived because it was first fully briefed in its reply brief. *See id.* Wireless Discovery also has not had the opportunity to respond to eHarmony's request. Thus, the Court denies eHarmony's request for attorney fees under 35 U.S.C. § 285 without prejudice.

9

**c.  Patent Eligible Subject Matter**

    **a.  Representativeness**

In the eHarmony case, the parties dispute whether certain claims of the asserted patents are representative.  *See* No. 22-480, D.I. 31 at 6-14, D.I. 39 at 3-7, D.I. 40 at 2.  eHarmony argues that claim 10 of the '875 patent is representative, claim 1 of the '352 patent is representative of claims 2 through 32, claim 1 of the '267 patent is representative of claims 2 through 18, and claim 1 of the '397 patent is representative of claims 2 through 15.  No. 22-480, D.I. 31 at 6-14.

Claim 10 of the '875 patent recites a method to match members of a social network in the same vicinity.  It states:

> 10. A method comprising:
>
>     providing, via a computing device, accessible through any of an internet connection and a mobile telecommunications provider network, access to stored user profile information about a first user using a respective first mobile communications device and a second user, using a respective second mobile communications device;
>
>     receiving, via the computing device, indications of the locations of the first and second mobile communications devices;
>
>     receiving, via the computing device, a unique device hardware identifier from all communications devices from all users linked in a social network to associate with profiles and authenticate when users sign in to a user account;
>
>     sending, via the computing device, to the second mobile communications device, an invitation to accept any of an invitation to connect and personal attribute information from, or share personal attribute information with, the first user, upon receipt of permission from the second user to receive personal attribute information about, or share personal attribute information with, the first user; and
>
>     connecting, via the computing device, the first user and the second user through the computing device for personal communication between first user and the second user, the personal communication comprising one or more SMS, E-mail, chat/instant messaging, multimedia, voice or video,

wherein the computing device is configured to locate information about the second user from a social network file of the second user, and transmit this information to the first mobile communications device, and

wherein the first and second users are members of a same social network, and the computing device is operable to disclose social network attributes such as a picture, name, and a location of first and second users in the vicinity or within a particular distance from one another for the purpose of connecting members.

No. 22-480, D.I. 21-5 at claim 10.

Claim 1 of the '352 patent recites a social networking system to match members of a social

network in the same vicinity. It states:

1. A system comprising:

a computing device configured to communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members such as picture(s) and name, wherein said computing device associates unique hardware identification of member devices and login credentials with member profiles and via a search process returns searches of members for others in a vicinity or in proximity thereto, and with personal attributes comprising pictures and names bringing an image of a human face to a device allocation in said search process; and

a first user using a respective first mobile communications device and a second user using a respective second mobile communications device each capable of connecting to the internet through any of a mobile telecommunications provider network and a local area wireless network,

wherein said computing device being in communication with the first and second mobile communication devices through internet connection via an application installed on the respective first and second mobile communication devices of the users, and configured to provide access to stored user profile information about said first user and said second user, respectively, including personal attributes comprising picture(s), a name, information, and a location,

wherein said computing device is configured to store static locations of members and receive information identifying current dynamic locations of all members based on real time location reporting from a client side application,

11

wherein said computing device is configured to calculate and determine a proximity of user locations based on any of a static and a dynamic location of the members which are updated on a profile database of said members,

wherein said computing device is configured to send to said first user upon inquiring of other members in the vicinity of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication device an invitation on behalf of said first user and including first user personal attributes for said second user to accept connecting with said first user,

wherein said computing device is configured to connect said first user and said second user through a members-only-social-network communication tools between said first user and said second user, wherein said communication tools comprise any of SMS, E-mail, chat/instant messaging, multimedia, voice, and video, and

wherein said computing device is configured to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device for further information beyond first introductory attributes such as picture and name only.

No. 22-480, D.I. 21-3 at claim 1.

Claim 1 of the '267 patent recites a social networking system to match members of a social network in the same vicinity. It states:

1. A system comprising:

a computing device configured to communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members;

a first mobile communications device communicatively linked to said computing device; and

a second mobile communications device communicatively linked to said computing device,

wherein said computing device provides access to stored user profile information about a first user and a second user,

wherein said computing device is configured to store static locations of members and receive information identifying current dynamic locations of all members in said network,

12

wherein said computing device is configured to calculate and determine a proximity of user locations,

wherein said computing device is configured to send to said first user upon inquiring of other members in said network of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication device an invitation on behalf of said first user for said second user to accept connecting with said first user,

wherein said computing device is configured to communicatively connect said first user and said second user,

wherein said computing device is configured to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device,

wherein the first user and the second user are members of a same social network, and the computing device is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members,

wherein said computing device permits discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by said first user, wherein said computing device permits said discoverable members to have their respective devices unconnected to an internet connection service at said time of the search being conducted by said first user, and wherein any of turned off devices and disconnected devices is discoverable by said computer device as said internet connection service is configured to report said any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to said first user.

No. 22-480, D.I. 21-6 at claim 1.

Claim 1 of the '397 patent recites a social networking system that matches users in the same vicinity. It states:

1.  A server configured to communicate with a first communication device of a first user and a second communication device of a second user over communication links comprising a cellular network, wherein the server comprises a processor configured to:

store in a data storage device a first profile associated with the first user and a second profile associated with a second user, both the first and the second profile comprises at least a picture and a name of their respective users thereby automatically eliminating anonymous communication of the first profile and the second profile between member devices without intervention by the first user or the second user;

associate each member profile with a unique hardware identification associated with the member devices;

identify a unique ID of a second member in the vicinity and spatial proximity of a first member and provide the first member with the profile of the second member comprising a picture and name to facilitate a connection between both members;

send the second member the profile of the first member including the picture and name upon the first member initiating an invite to the second member to connect over a networking service;

inform the first member if the second member has accepted or rejected the invite to connect initiated by the first member; and

once the second member accepts the invite of the first member, store the connectivity between both members in the data storage device and facilitate a chat feature between them using respective devices connected to the server,

wherein the first user and the second user are members of a same social network, and the processor is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members,

wherein the server permits discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by the first user, wherein the server permits the discoverable members to have their respective devices unconnected to an internet connection service at the time of the search being conducted by the first user, and wherein any of turned off devices and disconnected devices is discoverable by the server as the internet connection service is configured to report the any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to the first user.

No. 22-480, D.I. 21-4 at claim 1.

Wireless Discovery disagrees with eHarmony's representativeness arguments "that one claim of each asserted patent is representative of all claims." No. 22-480, D.I. 39 at 3. Wireless

Discovery, for example, states that claims 11 through 19 of the '875 patent "add additional concrete and technical elements and steps requiring separate patentability analysis." *Id.* However, Wireless Discovery fails to describe *what* additional concrete and technical elements the other claims recite that would require the Court to conduct a separate patentability analysis. In fact, for the other asserted patents, Wireless Discovery simply states, "[t]here are additional examples of differences in the claims of each of the Asserted Patents that for purposes of brevity are not all identified here." *Id.* Wireless Discovery fails to "present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

For example, Wireless Discovery argued during oral argument that claim 10 of the '875 patent's recitation of a unique device hardware identifier provides a "hardware solution[]." *See* Tr. 27:10-19. The Court, however, is not convinced by Wireless Discovery's arguments that the other claims of the asserted patents have different concrete and technical elements and steps requiring separate patentability analysis. The unique hardware identifier and turning on and off functionality are just generic computing components used for their conventional purpose.

In The Meet Group case, The Meet Group argues that claim 10 of the '875 patent, which is the only asserted patent in that case, is representative. No. 22-484, D.I. 13 at 8-9. Wireless Discovery does not dispute that claim 10 of the '875 patent is representative in its briefing in The Meet Group case. *See generally* No. 22-484, D.I. 20. Thus, eHarmony's and The Meet Group's identification of representative claims control for purposes of determining patent-eligibility under § 101.

15

### b. *Alice* **Step 1**

The Court must first determine whether the asserted patents are directed toward a patent-ineligible concept. The Court finds the representative claims are directed to the abstract idea of social networking. For example, claim 10 of the '875 patent can be distilled down to the following seven steps: (1) "providing 'user profile information' about two users of 'mobile communications devices,'" (2) "receiving 'indications' of the devices' locations," (3) "receiving 'identifiers' of all devices on a 'social network,'" (4) "sending one user's 'invitation' to exchange information with another user," (5) "connecting users for 'personal communication,'" (6) transmitting information from one user's 'social network file' to the other user's device," and (7) "disclosing 'social network attributes' of users who are 'in the vicinity of or within a particular distance from' each other." No. 22-480, D.I. 31 at 15. Claim 10 of the '875 patent is directed to "the abstract idea of automating the conventional establishment of social networks to allow humans to exchange information and form relationships." *NetSoc, LLC v. Match Grp., LLC*, 838 F. App'x 544, 548 (Fed. Cir. 2020). Courts in this District and other districts have also found claims similar to claim 10 of the '875 patent abstract. In *Jedi Techs., Inc. v. Spark Networks, Inc.*, the court found patents related to the idea "of matching people based on criteria such as personality traits or location" abstract. No. 16-1055-GMS, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017). Courts have also found "the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters" to be drawn to an abstract idea and claims directed to "[m]atching based on geographic location" abstract. *Walker Digit., LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508 (D. Del. 2014) (first quote); *Perry St. Software, Inc. v. Jedi Techs., Inc.*, 548 F. Supp. 3d 418, 433 (S.D.N.Y. 2021) (second quote).

16

Claim 10 of the '875 patent is no different than these cases. In fact, Wireless Discovery appears to agree that the representative claims of the asserted patents are directed to the abstract idea of social networking. Wireless Discovery states in its brief that "[t]he Claims of the [']875 patent are directed to improvements in exchanging information using mobile communications devices, in particular discovering members of a social network by associating their personal attributes to the mobile communications devices for purposes of exchange." No. 22-480, D.I. 39 at 13.

Claim 10's recitation of data-processing steps does not change the Court's analysis regarding whether the representative claims are directed to an abstract idea. In *NetSoc*, the claims at issue recited additional data-processing steps and the Federal Circuit still found the claims at issue directed to an abstract idea:

> The claim limitations of "maintaining" a list of participants, "presenting" a user with selectable categories, "receiving" the user's category selection, "receiving" an inquiry from the user, "selecting" a participant to receive the user's inquiry, "sending" the inquiry to the participant, "receiving" a response to the inquiry from the participant, "publishing" the response, and "tracking" feedback of the participants . . . are directed to automating a longstanding, well-known method of organizing human activity, similar to concepts previously found to be abstract.

*NetSoc*, 838 F. App'x at 550.

Similarly, the recitation of data-processing steps, e.g., sending, receiving, and processing data, in claim 10 of the '875 patent do not save the claims from being directed to an abstract idea.

The other representative claims are directed to the abstract idea of social networking. Claim 1 of the '352 patent can be distilled down to the following eight elements: (1) "a server hosting a social network that shares members' name and pictures, associates device identifiers and logins with 'member profiles,' searches based on location, and delivers search results that include 'an image of a human face;'" (2) "users using mobile devices 'capable of connecting to the

17

internet;'" (3) "an app on each device that allows the users to access social network profiles;" (4) "the server stores the devices' locations;" (5) "the server determines the proximity of two users;" (6) "the server sends one user search results of other nearby members of the social network and sends a second user an invitation;" (7) the server connects the two users 'through a members-only-social-network communication tools [sic] . . . of SMS, E-mail, chat/instant messaging, multimedia, voice, and video;' and (8) the server sends the first user information about the second user." No. 22-480, D.I. 31 at 16. Like claim 10 of the '875 patent, claim 1 of the '352 patent is directed to the abstract idea of automating the conventional establishment of social networks to allow "nearby members of the social network" to exchange information and form relationships. *NetSoc*, 838 F. App'x at 548.

Claim 1 of the '267 patent can be distilled down to the following eleven elements: (1) "a server hosting a social network that shares members' 'personal attributes;'" (2) "a first mobile device;" (3) "a second mobile device;" (4) "the server providing access to users' 'profiles;'" (5) "the server stores user locations;" (6) "the server determines the proximity of users;" (7) "the server sends one user search results of other nearby members of the social network and sends a second user an invitation;" (8) "the server connects the two users;" (9) "the server sends the first user additional information about the second user;" (10) "the 'first user and the second user are members of a same social network' and the server discloses social network profile information to each other to allow the users to connect;" and (11) "the server allows users to connect even if one is offline based on the latest location." No. 22-480, D.I. 31 at 17. Like claim 10 of the '875 patent and claim 1 of the '352 patent, claim 1 of the '267 patent is directed to the idea of automating the conventional establishment of social networks to allow "nearby members of the social network" to exchange information and form relationships. *NetSoc*, 838 F. App'x at 548.

18

Finally, claim 1 of the '397 patent can be distilled down to the following eight steps: (1) "storing user profiles;" (2) "associating each profile with a 'hardware identification' of each social network member's device;" (3) "identifying an 'ID' of a member nearby another member and displaying the profile information 'to facilitate a connection';" (4) "'initiating an invite . . . to connect over a networking service' and sharing the profile information of the member who initiated the invitation;" (5) "informing whether the 'invite' is 'accepted or rejected';" (6) "storing the 'connectivity' between the members and facilitating 'a chat feature';" (7) "the members 'are members of a same social network' and disclosing profile information of nearby members 'for the purpose of connecting members of the same social network';" and (8) "the server allows members to connect even if one is offline." No. 22-480, D.I. 31 at 17-18. Like the other representative asserted claims, claim 1 of the '397 patent is directed to the abstract idea of social networking.

Wireless Discovery also argued during oral argument that the asserted patents are not directed to an abstract idea because they are directed to a telecommunications network. *See, e.g.*, Tr. 36:1-7; 37:8-11. According to Wireless Discovery, the asserted patents add additional "hardware solutions" to allow communications between mobile devices. *See* Tr. 27:10-19. Thus, Wireless Discovery concludes that the claims of the asserted patents "are directed toward specific means and methods that improve relevant technologies." Tr. 31:1-6 (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016)).

The Court disagrees with Wireless Discovery's argument that the claims are not directed to an abstract idea. In *McRO*, the Federal Circuit held the invention recited "specific rules" or algorithms for a computer to "achieve an improved technological result," i.e., to produce "accurate and realistic lip synchronization and facial expression in animated characters." *McRO*, 837 F.3d at 1313-16. In the instant action, none of the representative clams recite any specific rules or

19

algorithms to improve a telecommunications network. Rather, the claims recite purely functional steps related to the abstract idea of exchanging information about people based on their location and membership in an organization.

For the above reasons, the Court finds the representative asserted claims are directed to the abstract idea of social networking. The Court must now proceed to *Alice* step two.

### c. *Alice* Step 2

In *Alice* step two, the Court considers the elements of the claim, both individually and as an ordered combination, to assess whether "the limitations present in the claims represent a patent-eligible application of the abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (citation omitted). Merely reciting the use of a generic computer or adding the words "apply it with a computer" cannot convert a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 223; *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (citation omitted).

The Court finds no saving inventive concept in any of the representative asserted claims. The asserted patents describe a social network system that uses "available technology and standard protocols available today," including a "standard cell phone," a "cellular phone network," "existing standard Bluetooth technology," and "Wi-Fi." No. 22-480, D.I. 21-5 at 2:31, 2:43-44, 2:50, 4:17-20, 11:45-46. Nothing in the representative asserted claims require anything other than "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350,

20

1355 (Fed. Cir. 2016). In other words, the representative asserted claims "mere[ly] recit[es] a generic computer," which is not an inventive concept that could "transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. The representative asserted claims in this action fail to add "a technological improvement to the computer or otherwise provide 'something more' to 'transform' the claims. *NetSoc*, 838 F. App'x at 549 (citing *Alice*, 573 U.S. at 217).

Wireless Discovery makes several conclusory statements that the asserted patents recite an inventive concept. *See generally* No. 22-480, D.I. 39; No. 22-484, D.I. 20. For example, Wireless Discovery states that the inventive concept of the '267 patent is "easily exchanging contact and/or personal information over the internet for purposes of social interaction by way of mobile devices without limitations to hardware brands." No. 22-480, D.I. 39 at 4. However, Wireless Discovery's alleged inventive concepts are merely rephrasing the abstract idea and saying it is an inventive concept, which is improper. *Trading Techs. Int'l, Inc. v. IBM LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) ("[t]he abstract idea itself cannot supply the invention concept, 'no matter how groundbreaking the advance.'" (internal citations omitted)).

Moreover, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' Those 'additional features' must be more than 'well-understood, routine, conventional activity.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citations omitted). Wireless Discovery fails to show how the alleged inventive concepts are more than well-understood, routine, or conventional. Tellingly, Wireless Discovery only cites to the specification in its brief, not to the claims, to support its bare assertions that the asserted patents recite an inventive concept. *See generally* No. 22-480, D.I. 39; No. 22-484, D.I. 20. Wireless Discovery's analysis is flawed

21

because its conclusory statements about the asserted patents' inventive concepts are untethered to the claim language of the asserted patents. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed." (internal citations and quotation marks omitted)); *see also American Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[F]eatures that are not claimed are irrelevant as to step 1 or step 2 of the Mayo/Alice analysis").

Wireless Discovery also argued during oral argument that the asserted patents recite interactions that create a social network that is "manipulated to yield the desired result, allowing connection of devices without requiring hardware compatibility, a result that overrides any consideration that this is a routine and conventional sequence of events ordinarily encountered in forming a social network." Tr. 40:5-11. The Court disagrees and finds the computer components recited in the claims are used for their conventional purposes. The representative asserted claims recite "establishing a social network on a computer," which "are quintessential 'apply it with a computer' claims." *NetSoc*, 838 F. App'x. 544 at 548-49 (citation omitted).

For the above reasons, the Court finds no inventive concept that transforms the representative claims into a patent-eligible application of the abstract idea. Thus, the Court finds by clear and convincing evidence that the representative claims fail *Alice* step 2 and the '875, '362, '267, and '397 patents are invalid under § 101.

### d. Wireless Discovery's Request for Leave to Amend

Wireless Discovery also requests leave to amend its complaint "if the Court believes the teachings and citations from the patents-in-suit should be incorporated into the complaint." *See*

No. 22-480, D.I. 39 at 20; *see also* No. 22-484, D.I. 20 at 15.   When deciding a Rule 12(b)(6) motion, a court considers "documents that are attached to or submitted with the complaint." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted).   Wireless Discovery attached to its complaint the asserted patents.   No. 22-480, D.I. 21-3, D.I. 21-4, D.I. 21-5, D.I. 21-6; No. 22-484, D.I. 1-3.   The Court reviewed those patents when deciding the pending Motions to Dismiss.   The claims of the patents say what they say.   Amending the complaint would not change the Court's § 101 analysis.   Thus, Wireless Discovery's amendments would be futile, and the Court denies Wireless Discovery's request.

## IV.   CONCLUSION

Therefore, at Wilmington this 6th day of February 2023, **IT IS HEREBY ORDERED** that The Meet Group's Motion to Dismiss for Failure to State a Claim (No. 22-484, D.I. 12) is **GRANTED** and eHarmony's Motion to Dismiss for Failure to State a Claim (No. 22-480, D.I. 30) is **DENIED-IN-PART** and **GRANTED-IN-PART**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE